**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DANYEL TASHA TEAGLE GEORGE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 23-cv-02303-LKG |
| ) | |
| v. ) | Dated:  June 14, 2024 |
| ) | |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

In this civil action, Plaintiff, Danyel Tasha Teagle George, asserts claims against Defendant Experian Information Solutions, Inc. ("EIS"), for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et. seq*., arising from the alleged mixing of her credit files with the credit files of another consumer.  *See generally* ECF No. 1.  EIS has moved to compel arbitration, and to stay this matter, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  ECF Nos. 25, 25-1.  Plaintiff has also moved to exclude the Declaration of Dan Smith, which EIS has filed in support of its motion to compel. ECF Nos. 25-2, 30.

These motions are fully briefed. ECF Nos. 25-1, 25-2, 26, 30.  No hearing is necessary to resolve the motions.  L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court: (1) **GRANTS** EIS' motion to compel arbitration; (2) **DENIES** Plaintiff's motion to exclude the Declaration of Dan Smith; and (3) **DISMISSES** this matter.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    Factual Background

In this civil action, Plaintiff asserts claims against EIS for alleged violations of the FCRA arising from the alleged mixing of her credit files with the credit files of another consumer.  *See generally* ECF No. 1.  Specifically, Plaintiff asserts the following two claims against EIS in the complaint: (1) FCRA/failing to follow reasonable procedures to assure maximum possible accuracy (15 U.S.C. § 1681e(b)) (Count I) and (2) FCRA/furnishing a credit report without a permissible purpose (15 U.S.C. § 1681b(a)) (Count II).  *Id*. at ¶¶ 154-171.  As relief, Plaintiff seeks to recover actual, statutory and punitive damages and attorneys' fees and costs from EIS.  *Id*. at Prayer for Relief.

The Parties

Plaintiff Danyel Tasha Teagle George is a resident of Maryland.  ECF No. 1 at ¶ 37.

Defendant EIS is a consumer reporting agency, with its principal place of business located in Allen, Texas, that does business in Maryland.  *Id.* at ¶¶ 38-39.

Plaintiff's CreditWorks Account

Plaintiff's claims against EIS in this civil action involve allegations that EIS incorrectly generated her credit report, and improperly furnished her credit report to certain third parties, in connection with a credit monitoring and reporting service called "CreditWorks."  *See generally* ECF No. 1.  As background, CreditWorks is a credit monitoring and reporting service that monitors its members' credit *via* the website ConsumerInfo.com, Inc. ("CIC").  ECF No. 25-1 at 9.  CIC conducts this business as Experian Consumer Services ("ECS").  *Id.*  Defendant EIS is an affiliate of ECS.  *Id.* at 2-3.

The sign up process for CreditWorks is conducted online.  *Id.* at 4.  And so, the users of CreditWorks must submit an online form to create a CreditWorks account.  *Id.*

In this regard, the parties disagree about how Plaintiff signed up for CreditWorks.  ECF Nos. 25-1, 25-2, 26, 26-1.  EIS maintains that Plaintiff signed up for CreditWorks by completing an online form on January 31, 2022.  ECF No. 25-1 at 11.  EIS also maintains that

---

[1] The facts recited in this memorandum opinion are derived from the complaint; Defendant's motion to compel arbitration; the memoranda in support thereof; and the Declaration of Dan Smith.  ECF Nos. 1, 25, 25-1, 25-2.

the online form that Plaintiff completed provides that: **"By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Private Policy**." ECF No. 25-1 at 11; ECF No. 25-2 at 7.[2]

EIS contends that the "Terms of Use Agreement" for CreditWorks appears in blue font on the online CreditWorks form and that users can click onto a hyperlink to access the CreditWorks Terms of Use Agreement. ECF No. 25-1 at 11. In this regard, EIS has submitted the Declaration of Dan Smith, the Director of Product Operations for CIC, which explains the process for creating a CreditWorks account *via* an online form and the process that Plaintiff followed when she created her CreditWorks account. ECF No. 25-2 at ¶¶ 1, 3.

Mr. Smith states in his Declaration that:

> Based upon my review of CIC's membership enrollment data maintained in the regular course of business, on January 31, 2022, Plaintiff enrolled in CreditWorks. In order to successfully enroll, Plaintiff had to complete a single webform. The form required Plaintiff to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she entered her personal information, Plaintiff had to click the "Create Your Account" button on the webform in order to enroll. Immediately below the boxes to enter her e-mail address and password, was the following disclosure: "By clicking "Create Your Account": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." A true and correct representation of the webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to this Declaration.

*Id.* at ¶ 3. With regards to the CreditWorks Terms of Use Agreement, Mr. Smith also states that:

> The phrase "Terms of Use Agreement" in the disclosure was off-set in blue text and, if clicked, would have presented the consumer with the

---

[2] The Terms of Use Agreement in effect at the time Plaintiff enrolled in CreditWorks is set forth in Exhibit 2 to EIS' motion to compel. ECF No. 25-2 at 8. That agreement contains an "Amendments" clause that states, in relevant part, that:

> This Agreement may be updated from time to time . . . . Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement . . . .

*Id.* at 12. The Terms of Use Agreement was modified on July 31, 2023. *Id.* at 51. And so, the Terms of Use Agreement in effect when Plaintiff brought this action is the Terms of Use Agreement dated July 31, 2023, which is set forth in Exhibit 3 to EIS' Motion. *Id.* at 50.

full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Create Your Account" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." When a consumer clicked on the "Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure was a large purple button that reads: "Create Your Account." The webform, the disclosure, and the "Create Your Account" button appeared on a single webpage.

*Id.* at ¶ 4. And so, Mr. Smith represents to the Court that, "[a]fter entering her information, Plaintiff clicked the "Create Your Account" button, thereby accepting and agreeing to the Terms of Use Agreement," and that "Plaintiff would not have been able to successfully enroll in CreditWorks unless she clicked that button." *Id.* at ¶ 5. Lastly, Mr. Smith states that Plaintiff has continuously used CreditWorks since enrolling in the service on January 31, 2022. *Id.* at ¶¶ 3, 5.

Plaintiff neither disputes that she enrolled in CreditWorks and used this credit reporting and monitoring service, nor disagrees with Mr. Smith's general description of the process for establishing a CreditWorks account. ECF Nos. 1, 26, 26-1. But Plaintiff represents to the Court that she does not recall visiting the CreditWorks website, or agreeing to the CreditWorks Terms of Use Agreement. ECF No. 26-1 at 2.

<u>The Plaintiff's Allegations</u>

In the complaint, Plaintiff alleges that EIS incorrectly generated her credit report and improperly furnished her credit report to certain third parties in connection with the credit monitoring and reporting services provided pursuant to her CreditWorks account. ECF No. 1 at ¶¶ 154-171. Specifically, Plaintiff alleges that that she unsuccessfully applied for a Parent PLUS loan from the United States Department of Education for her youngest daughter's college expenses in August 2022. ECF No. 1 at ¶ 84. Plaintiff also alleges that, in January 2023, she again unsuccessfully applied for a Parent PLUS loans from the United States Department of Education. *Id.* at ¶¶ 77, 82.

Plaintiff contends that she was informed by Equifax that her Parent PLUS loan applications were denied as a result of her mixed credit and file reports. *Id.* at ¶ 138. Plaintiff

4

also contends that her credit application to Synchrony Bank and a loan application submitted to OneMain Financial were also rejected, because of her mixed credit and file reports. *Id.* at ¶¶ 133-136.

Plaintiff also alleges that she obtained her credit report from EIS on or about April 3, 2023. *Id.* at ¶ 104. In this regard, Plaintiff alleges that the provided credit report includes three accounts that were not hers and, in fact, belonged to her brother. *Id.* at ¶¶ 106-108. In addition, Plaintiff alleges that her credit report also contained a list of six "Unrelated Experian Inquiries," which were the result of her brother's various applications for credit. *Id.* at ¶¶ 113-115.

Plaintiff contends that EIS was aware that its matching algorithms, which are used to match credit information to consumer credit files, at times incorrectly matched information belonging to consumers' credit file resulting in a "mixed or merged credit file." *Id*. at ¶ 65. And so, Plaintiff also contends in this case that her credit reports were improperly "generated by [EIS] containing information belonging to another consumer," despite EIS' knowledge about the problem of mixed credit files. *Id*. at ¶ 67.

Lastly, Plaintiff contends that EIS "furnished [her] credit reports to various entities without a permissible purpose in response to credit applications of another" in violation of the FCRA. *Id*. at ¶ 167. And so, Plaintiff seeks to recover actual, statutory and punitive damages and attorneys' fees and costs from EIS. *Id*. at Prayer for Relief.

The Arbitration Agreement

Relevant to the pending motion to compel, EIS argues that Plaintiff entered into a valid arbitration agreement, which governs all disputes involving her CreditWorks account, including the FCRA claims asserted against EIS in this matter. ECF No. 25-1 at 14-15. And so, EIS has also provided the Court with a copy of the parties' purported arbitration agreement, which is contained in the CreditWorks Terms of Use Agreement, dated July 31, 2023. ECF No. 25-2 at 50-81.

The pertinent provision of the Terms of Use Agreement is entitled "Arbitration Agreement," and this provision provides, in relevant part, that:

> **ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement**, which includes any information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration.

*Id.* at 55 (emphasis added).  The arbitration agreement further provides that:

> This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us relating to, or arising out of, this Agreement, any Service and/or Website, including any Information you obtained through the Services or Websites, subject to arbitration to the fullest extent permitted by law.  **The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including . . .  the Fair Credit Reporting Act . . .),** for fraud, misrepresentation or any other legal theory; . . .

*Id.* (emphasis added).

The arbitration agreement also contains a delegation clause, which provides, in relevant part, that:

> **All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability,** (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate, (iv) whether all or any part of this arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability . . . .  **Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes**.  However if putative class or representative claims are initially brought by either party in a court of law, and a motion to compel arbitration is brought by any party, then the court shall have the power to decide whether this agreement permits class or representative proceedings.

*Id.* at 56. (emphasis added). And so, EIS argues that Plaintiff's claims, including any threshold issues about the arbitrability of those claims and EIS' ability to enforce the arbitration agreement, have been delegated to the arbitrator pursuant to the parties' valid arbitration agreement.  ECF No. 25-1.

**B.  Procedural Background**

Plaintiff commenced this civil action on August 23, 2023.  ECF No. 1.  On September 13, 2023, EIS filed an answer to the complaint.  ECF No. 14.

On December 19, 2023, EIS filed a motion to compel arbitration and memorandum in support thereof.  ECF Nos. 25, 25-1. On January 2, 2024, Plaintiff filed a response in opposition

to EIS' motion to compel arbitration and a motion to exclude the Declaration of Dan Smith. ECF Nos. 26, 30.

On January 9, 2024, EIS filed a reply brief and a response in opposition to Plaintiff's motion to exclude.  ECF Nos. 39, 40.  On January 12, 2024, and January 15, 2024, EIS filed notices of supplemental authority.  ECF Nos. 47, 48.  On April 25, 2024, Plaintiff filed a notice of supplemental authority and a response in opposition to EIS' notices.  ECF Nos. 53, 54.

These motions having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.  Rule 56 And Motions To Compel Arbitration

This Court treats motions to compel arbitration as motions for summary judgment pursuant to Fed. R. Civ. P. 56.  *See, e.g.*, *Cherdak v. ACT, Inc*., 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered") (internal citations omitted); *Owen v. CBRE, Inc*., 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted).  Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Id.*  When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor.  *Id.* at 255 (citation omitted).  But the Court may rely only on facts supported in the record.  *See Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003).  And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings.  *See id.*

### B.  The Federal Arbitration Act

The FAA "requires courts to enforce covered arbitration Agreement according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citations omitted).  Under

Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration.  *See* 9 U.S.C. § 4.  In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.*  The statute also provides that, when presented with such a petition, a "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*  But, "[i]f the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof."  *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* § 3.  And so, the Fourth Circuit has recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: (1) a stay of litigation in any case raising a dispute referable to arbitration under Section 3 and (2) an affirmative order to engage in arbitration under Section 4.  *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d 95, 106 (D. Md. 2021).

The Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing). And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). But "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—*i.e.,* that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted). The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'").

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But "if the claimant specifically attacks the validity of the delegation clause itself, a court

may consider that clause's enforceability." *Id.* (citing *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)). And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause. *Id.* at 338 (citation omitted). If the Court concludes that a plaintiff "specifically challenged the enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (quoting *Minnieland*, 867 F.3d at 455).

Lastly, the Fourth Circuit has held it mandatory that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)).[3] The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g., Willcock v. My Goodness! Games, Inc*., 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Phears v. LVNV Funding, LLC*, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

### C. Applicable Maryland Law

When determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability[.]" *Muriithi*, 712 F.3d at 179 (citations omitted). In this regard, the Supreme Court of Maryland (formerly the Court of Appeals of Maryland) has held that, "[t]o be binding and enforceable, contracts ordinarily require consideration." *Cheek v. United Healthcare*, 835 A.2d 656, 661 (Md. 2003) (citations omitted); *see also Chernick v. Chernick*, 610 A.2d 770, 774 (Md. 1992) (binding contracts "must be supported by

---

[3] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway*, 819 F.3d at 84 (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)) (internal quotation marks omitted).

consideration") (citation omitted).  This Court has upheld internet agreements that "'require a customer to affirmatively click a box on the website acknowledging receipt of an assent to the contract terms before he or she is allowed to proceed using the website.'"  *See e.g.*, *Lyles v. Chegg, Inc.*, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (citing *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009); *see also Zayanderoudi v. Nat'l R.R. Passenger Corp.*, 2023 WL 4744746, at *4 (D. Md. July 25, 2023) (finding that "Plaintiff was required to affirmatively click the box manifesting her assent to the Terms and Conditions… and such 'click-wrap' agreements are fully enforceable").

Lastly, this Court has also held that, when a party does not recall entering into an agreement, the Court assesses the agreement's validity according to summary judgement standards.  *Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015) (citing *Whitten v. Apria Healthcare Grp., Inc.*, 2015 WL 2227928, at *2 (D. Md. May 11, 2015)).  And so, if a party "provides evidence" that they did not enter into the agreement, the Court may not compel arbitration.  *Whitten*, 2015 WL 2227928 at *4.  But a plaintiff "may not rest upon the mere allegations or denials of her pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial."  *Roach*, 165 F. Supp. 3d at 348; Fed. R. Civ. P. 56(c)(1).

## IV.   ANALYSIS

EIS seeks to compel the arbitration of Plaintiff's claims in this FCRA dispute, upon the grounds that: (1) the parties have entered into a valid agreement to arbitrate Plaintiff's claims; (2) EIS may enforce the arbitration agreement; and (3) issues of arbitrability have been delegated to the arbitrator under the parties' arbitration agreement.  ECF No. 25-1.  And so, EIS requests that the Court grant its motion to compel arbitration and stay this matter, pending completion of the parties' arbitration.  *Id*. at 16.

Plaintiff counters in her response in opposition to EIS' motion to compel that she is not required to arbitrate this dispute, because: (1) EIS has not shown that the parties entered into a valid arbitration agreement and (2) Plaintiff was not aware that she agreed to arbitrate her claims.  ECF No. 26 at 12-25.  And so, Plaintiff requests that the Court deny EIS' motion to compel.  *Id.* at 21.  In addition, Plaintiff requests that the Court exclude the Declaration of Dan

Smith, because he lacks personal knowledge about whether she entered into a valid arbitration agreement with EIS. *Id.* at 15-17.

For the reasons set forth below, Plaintiff has not shown that exclusion of the Declaration of Dan Smith is warranted in this matter. A plain reading of the CreditWorks Terms of Use Agreement also makes clear the parties entered into a valid arbitration agreement regarding Plaintiff's CreditWorks account and that Plaintiff must pursue her claims in this matter, including any threshold issues regarding arbitrability, before an arbitrator. And so, the Court: (1) GRANTS EIS' motion to compel arbitration; (2) DENIES Plaintiff's motion to exclude the Declaration of Dan Smith; and (3) DISMISSES the complaint.

### A. The Court Denies Plaintiff's Motion To Exclude

As an initial matter, the Court declines to exclude the Declaration of Dan Smith, which EIS has provided in support of its motion to compel. Plaintiff seeks to exclude Mr. Smith's Declaration upon the ground that he lacks personal knowledge about what she did and experienced when she signed up for a CreditWorks account. ECF No. 26 at 19-20. But Mr. Smith states in his Declaration that he is the Director of Product Operations for CIC, oversees CIC's online sign up process for CreditWorks, and that he is able to verify that Plaintiff enrolled in CreditWorks on January 31, 2022, based upon his review of CIC's membership enrollment data which is maintained in the regular course of business. ECF No. 25-2 at ¶ 1. Mr. Smith also explains in his Declaration that he is personally familiar with the process for establishing a CreditWorks account *via* the CIC website. *Id.* at ¶¶ 1, 3.

As the corporate designee for CIC, Mr. Smith is presumed to have personal knowledge of matters related to the CIC website and the process of creating a CreditWorks account. *See Catawba Indian Tribe of S.C. v. State of South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002). The process for creating a CreditWorks account is central to the parties' dispute in this case. Given this, the Court declines to exclude the Declaration of Dan Smith. *See Roach v. Navient Sols., Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015) (citing *Whitten v. Apria Healthcare Grp., Inc.*, 2015 WL

2227928, at *2 (D. Md. May 11, 2015)) (the Court assesses the validity of the parties' purported arbitration according to summary judgement standards.).[4]

### B.  The Parties Have Entered Into A Valid Arbitration Agreement

Turning to the merits of EIS' motion to compel, the Court is satisfied that the parties have entered into a valid arbitration agreement that covers Plaintiff's claims in this FCRA matter.

The Fourth Circuit has held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation." *Levin v. Alms and Assocs., Inc*., 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (brackets existing).  Given this, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate").  Because the Court must grant a motion to compel arbitration where a valid arbitration agreement exists, and the issues in the case fall within its purview, the Court engages in a limited review of this case to ensure that a valid arbitration agreement exists between the parties and that the parties' dispute falls within the scope of that agreement.  *See Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)); *see also Murray v. United Food & Com. Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).

In this case, EIS has shown that the parties entered into a valid arbitration agreement when Plaintiff created her CreditWorks account.  As Mr. Smith explains in his sworn Declaration, Plaintiff and other the users of CreditWorks must submit an online form *via* the ConsumerInfo.com website to create a CreditWorks account.  ECF No. 25-2 at ¶ 3 (stating that "[i]n order to successfully enroll [in CreditWorks], Plaintiff had to complete a single webform . . . [and] [a]fter she entered her personal information, Plaintiff had to click the "Create Your

---

[4] While Plaintiff correctly argues that Mr. Smith lacks personal knowledge of precisely what she did or observed when completing the online CreditWorks form, such a lack of personal knowledge regarding these matters goes to the weight to be given to Mr. Smith's Declaration.

Account" button on the webform in order to enroll"). Mr. Smith also explains that the online form that CreditWorks customers use to create an account provides that: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Private Policy." *Id.; see also, Lyles*, 2020 WL 1985043, at *3 (D. Md. Apr. 27, 2020) (citing *Meyer v. Uber Techs.*, *Inc.*, 868 F.3d 66, 75 (2d. Cir. 2017) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016)) (holding that online agreements must provide users with "reasonable notice that a click will manifest an assent to an agreement"). And so, Mr. Smith represents to the Court that, "[a]ter entering her information, Plaintiff clicked the "Create Your Account" button and, thereby, accepted and agreed to the CreditWorks Terms of Use Agreement. ECF No. 25-2 at ¶ 5.

While Plaintiff disputes that she agreed to the CreditWorks Terms of Use Agreement, she does not dispute Mr. Smith's description of the CreditWorks enrollment process. ECF Nos. 26, 26-1. Rather, Plaintiff simply represents to the Court that she does not recall agreeing to the CreditWorks Terms of Use Agreement. ECF No. 26-1 at 2. Plaintiff's lack of recollection in this regard, without more, is not sufficient to rebut the evidence before the Court showing that she agreed to the CreditWorks Terms of Use Agreement. *Roach*, 165 F. Supp. 3d at 347-48 (when a party does not recall entering into an agreement, the Court assesses the agreement's validity according to summary judgement standards. However, a party "may not rest upon the mere allegations or denials of her pleading but must instead, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial."). And so, the Court is satisfied that Plaintiff agreed to the CreditWorks Terms of Use Agreement when she created her CreditWorks account.

### C. The Arbitration Agreement Is Valid And Requires That Plaintiff Arbitrate This Dispute

The Court is also satisfied that the parties entered into a valid arbitration agreement pursuant to the Terms of Use Agreement. A plain reading of the Terms of Use Agreement makes clear that the parties agreed to arbitrate disputes arising from Plaintiff's CreditWorks account. ECF No. 25-2 at 50-81. Notably, the Terms of Use Agreement that was in effect when Plaintiff filed this civil action contains an arbitration agreement, which provides, in relevant part, that:

> **ECS and you agree to arbitrate all disputes and claims between us that arise out of or relate to this Agreement**, which includes any information you obtain through the Services or Websites, to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration.

ECF No. 25-2 at 55 (emphasis added).  The arbitration agreement further provides that:

> This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us relating to, or arising out of, this Agreement, any Service and/or Website, including any Information you obtained through the Services or Websites, subject to arbitration to the fullest extent permitted by law. **The agreement to arbitrate includes, but is not limited to, claims brought by you against ECS, whether based in contract, tort, statute (including . . . the Fair Credit Reporting Act . . .)**, for fraud, misrepresentation or any other legal theory; . . .

*Id.* (emphasis added).  The Court reads this language to require that Plaintiff arbitrate "all disputes and claims" that arise out of or relate to the CreditWorks Terms of Use Agreement.  *Id.* The Court also reads the parties' arbitration agreement to specifically cover claims and disputes arising under the Fair Credit Reporting Act. *Id.*

EIS also argues with persuasion that the parties' arbitration agreement contains a valid delegation clause, which requires that threshold issues, such as the arbitrability of Plaintiff's claims and whether EIS may directly enforce the arbitration agreement, be delegated to the arbitrator.  ECF No. 25-1 at 22.  In this regard, the arbitration agreement's delegation clause provides, in relevant part, that:

> **All issues are for the arbitrator to decide including, but not limited to, (i) all issues regarding arbitrability, (ii) the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions**, (iii) whether you or ECS, through litigation conduct or otherwise, waived the right to arbitrate, (iv) whether all or any part of this arbitration provision or Agreement is unenforceable, void or voidable including, but not limited to, on grounds of unconscionability . . . . Pursuant to this agreement, the arbitrator has been delegated with, and possesses, exclusive authority to resolve all of the above-enumerated types of disputes.

ECF No. 25-2 at 56 (emphasis added).  The Court reads this delegation clause to broadly delegate all issues regarding the arbitrability of this dispute to the arbitrator.[5]  Given this, Plaintiff must pursue all claims against EIS in this FCRA matter, including any threshold issues regarding the scope of the arbitration agreement and whether EIS may enforce that agreement, before the arbitrator.

### D.  The Court Will Dismiss This Matter

Because the Court concludes that the parties' arbitration agreement, and the delegation clause contained therein, are valid and enforceable, the Court also concludes that it is appropriate to dismiss this matter.  *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)) (holding that, when an agreement "clearly and unmistakably" delegates the threshold issue of arbitrability to the arbitrator, the Court must enforce that delegation clause and send that question to arbitration).  As the Fourth Circuit has held, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001).  And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions.  *See, e.g., Willcock v. My Goodness! Games, Inc*., 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Phears v. LVNV Funding, LLC*, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

As discussed above, the broad language of the parties' arbitration agreement makes clear that the parties have agreed to arbitrate all claims and issues arising from or relating to Plaintiff's CreditWorks account.  The Court also observes that the other named Defendants in this matter have been voluntarily dismissed from this action.  ECF Nos. 57, 58.  Because Plaintiff's remaining claims against EIS must be referred to the arbitrator, the Court DISMISSES the complaint.

---

[5] Because the Court concludes that issues regarding arbitrability are delegated to the arbitrator under the parties' arbitration agreement, the Court does not address whether EIS may directly enforce that agreement.

## V. CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** EIS' motion to compel arbitration;
2. **DENIES** Plaintiff's motion to exclude the Declaration of Dan Smith; and
3. **DISMISSES** the complaint.

A separate Order shall issue.


**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

17